STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**March 7, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **M.K., S.G., and A.G.**

**No. 15-0902** (Mercer County 13-JA-016, 13-JA-017, & 13-JA-018)

## MEMORANDUM DECISION

Petitioner Mother M.G., by counsel R. Thomas Czarnik, appeals the Circuit Court of Mercer County's August 24, 2015, order terminating her parental, custodial, and guardianship rights to S.G. and A.G., and her custodial rights to M.K. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, Andrea P. Powell, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental, custodial and guardianship rights to S.G. and A.G., and her custodial rights to M.K., and also that the DHHR erred in applying West Virginia Code §§ 49-6-5b.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2013, the DHHR filed an abuse and neglect petition against the parents. As to petitioner, the DHHR alleged that she was experiencing auditory hallucinations, delusions, and paranoia, as well as abusing multiple drugs, including one of her children's medications. Based upon these conditions, the DHHR alleged that petitioner was unable to provide for her children's basic needs, including mental health treatment, proper discipline, education, and personal hygiene. The DHHR also alleged aggravated circumstances were present in the case because of the abuse inflicted by J.G., the biological father of S.G. and A.G. According to the petition, J.G. was incarcerated for murdering his wife.

In March of 2013, the circuit court held a preliminary hearing and left S.G. and A.G. in petitioner's custody. At the time, M.K. was in state custody as a result of delinquency proceedings. In July of 2013, the circuit court held an adjudicatory hearing, during which

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

petitioner stipulated to neglect due to her mental health issues. The circuit court also granted the DHHR's motion to place the children in the DHHR's custody, though petitioner was permitted visitation with the children. The circuit court also granted petitioner a post-adjudicatory improvement period, which was later extended in September of 2013.

In October of 2013, petitioner's psychological evaluation was filed with the circuit court. According to the evaluation, petitioner was diagnosed with delusional disorder, persecutory type; opioid dependence with psychological dependence, early full remission; and problems with her primary support group. In January of 2014, the circuit court held a review hearing where it was indicated that petitioner was complying with the terms of her improvement period. As such, petitioner was granted another extension to her improvement period. Then, in April of 2014, the circuit court granted petitioner a dispositional improvement period.

In November of 2014, the circuit court held a review hearing, during which both the children's psychiatrist and the guardian expressed concerns about overnight visitation between petitioner and the children, due to behavioral issues the children exhibited. The circuit court extended petitioner's dispositional improvement period, but expressed concern that reunification might not be possible within the statutorily-imposed timeframe for abuse and neglect proceedings. In February of 2015, the circuit court held a review hearing, during which the DHHR once again indicated that the children's psychiatrist opposed increased visitation with petitioner. In March of 2015, the circuit court held a review hearing and set the matter for disposition. At this point, petitioner's overnight visitation with the children was terminated. Thereafter, the DHHR filed a motion to terminate petitioner's parental, custodial, and guardianship rights to S.G. and A.G., and also her custodial rights to M.K. The circuit court held a dispositional hearing in July of 2015, after which it took the matter under advisement and scheduled a hearing to render its decision in August of 2015. At the subsequent hearing, the circuit court terminated petitioner's parental, custodial, and guardianship rights to S.G. and A.G., and her custodial rights to M.K. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

2

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in regard to the circuit court terminating petitioner's parental, custodial, and guardianship rights to S.G. and A.G., or her custodial rights to M.K. In support of this argument, petitioner relies on our prior holding wherein we stated as follows:

> "Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). Upon our review, however, the Court notes that no allegations were made against petitioner involving her intellectual incapacity. Instead, the DHHR made allegations against petitioner regarding her substance abuse, her failure to properly provide for the children, and her mental health issues. In the case petitioner relies upon, the mother at issue was determined to have a second-grade reading level, an IQ of fifty, and limited insight regarding appropriate behaviors and boundaries for children. As a result of these limitations, the DHHR alleged that the mother would learn certain skills, but was unable to retain them or implement them in parenting her children. *Miranda T.* at 516, 678 S.E.2d at 22. In the matter on appeal, petitioner's psychological evaluation revealed that she graduated from high school and attended college. Moreover, petitioner "[gave] up easily on [a] portion of the" Kaufman Brief Intelligence Test – Second Edition. Ultimately, however, the evaluator found that "there is no indication that cognitive deficits impair [petitioner's] parenting." For these reasons, we find that our holding from *Miranda T.* is inapplicable and, as such, petitioner is entitled to no relief in this regard.

However, even if we were to consider the specific allegations against petitioner in this matter as constituting allegations regarding her intellectual incapacity, it is clear that the DHHR made the requisite thorough effort to determine if petitioner could adequately care for the children with intensive, long-term assistance. Specifically, the DHHR provided petitioner with services in this matter for approximately two-and-a-half years during the course of the proceedings below. The record shows that the family case plan in this matter was designed to enable petitioner to manage her own mental health issues while also caring for the children, including education and services related to proper discipline and child care. While it is true that petitioner made some progress below, the evidence ultimately established that petitioner failed to overcome her mental health issues such that she could properly parent the children, even after the DHHR provided extensive services. As such, the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect.

Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." While it may be true that petitioner complied with some services, the record is clear that her level of compliance was insufficient to reduce or prevent the neglect at issue. Further, the circuit court found that termination of petitioner's parental rights was in the children's best interests. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings. Additionally, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As such, it was not error for the circuit court to terminate petitioner's parental, custodial, and guardianship rights to S.G. and A.G., or her custodial rights to M.K.

On appeal, petitioner relies substantially on the testimony of her treating psychologist, Steve Ferris.[2] According to petitioner, this witness provided testimony in support of reunifying petitioner and her children. However, petitioner's argument ignores the testimony from both Dr. Timothy Saar, who performed petitioner's psychological evaluation, and David Ellis, a therapist for the children. Both of these witnesses testified that reunification was not in the children's best interest. Dr. Saar testified that petitioner had a poor prognosis for correcting her mental health issues sufficient to parent the children, while Mr. Ellis testified that the children's best interests dictated fewer visitations with petitioner due to its effect on their behavior. Moreover, the circuit court noted that Mr. Ferris' opinions were based on interactions with petitioner only, given that he lacked opportunities to interact with the children. Further, the circuit court found that Mr. Ferris, in his role as petitioner's treating therapist, advocated for her in the proceedings below. Ultimately, the circuit court made a credibility determination regarding these witnesses and gave more weight to the testimony from Dr. Saar and Mr. Ellis. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). For these reasons, we find no error in this regard.

---

[2]In the order on appeal, the circuit court refers to this witness as "Steve Farris." However, throughout the record, this individual is referred to as "Steve Ferris." As such, the Court will use the latter in reference to this witness in this memorandum decision.

Finally, petitioner argues that the DHHR erred in applying West Virginia Code § 49-4-605(b) and, as such, it was error to terminate her parental rights. The Court, however, does not agree. Petitioner's argument on this issue represents a misunderstanding of the applicable statute and its operation in abuse and neglect proceedings. Petitioner essentially argues that the DHHR was prohibited from seeking termination of her parental rights because of the children's placement with relatives, the oldest child's stated preference to remain with petitioner, and her allegation that the DHHR did not provide reasonable efforts to return the children to her home. According to West Virginia Code § 49-4-605(b),

> The [DHHR] may determine not to file a petition to terminate parental rights when: (1) At the option of the [DHHR], the child has been placed permanently with a relative by court order; (2) The [DHHR] has documented in the case plan made available for court review a compelling reason, including, but not limited to, the child's age and preference regarding termination or the child's placement in custody of the [DHHR] based on any proceedings initiated under part seven of this article, that filing the petition would not be in the best interests of the child; or (3) The [DHHR] has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

Importantly, as used in this statute, the word "may" is a permissive term connoting discretion. *Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) (stating that "[a]n elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). Therefore, petitioner's argument on this issue is misplaced, as the statute does not bar the DHHR from seeking termination, but instead provides it with discretion as to when it may file such a petition.

Moreover, petitioner's argument ignores the fact that termination of her parental rights was necessary for the children's welfare. In reaching its decision, the circuit court found that "Dr. Saar noted a dramatic improvement on the part of [the] two younger infant children since they were removed from [petitioner's] full[-]time care." As we have previously held, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). As such, we find no error in the DHHR's decision to file a petition to terminate petitioner's parental rights in this matter.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 24, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **March 7, 2016**

5

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II